Hannah **HENKEL**, Plaintiff,

v.

Albert John **STRATTON**, Defendant.

No. C80–1777Y.

United States District Court,
N.D. Ohio, E.D.

June 24, 1985.

Christopher Nardi, J. William Petro, Petro, Rademaker, Matty & McClelland, Cleveland, Ohio, for plaintiff.

Frederick R. Nance, Squire, Sanders & Dempsey, Cleveland, Ohio, Harold E. Masback, III, John Timothy Byrd, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER RE: FURTHER BRIEFING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KRENZLER, District Judge.

■ In this case, Hannah Henkel[1] seeks to recover from the defendant, Albert John Stratton, insurance benefits allegedly due as a result of the death of Deborah Lee Gentile. Mrs. Henkel was the beneficiary of a life insurance policy purchased for Deborah Gentile in March of 1979. On the morning of May 17, 1979, Deborah Gentile was found murdered in her motel room at the Pittsburgh Airport. On January 11, 1984, Richard Henkel, Hannah Henkel's son, pled guilty to killing, or having directed another to kill, Deborah Gentile. At that time, he also pled guilty to attempted theft by deception in connection with his efforts "... to defraud the insurance company from the funds pursuant to the insurance policy...." *Plea Transcript* at p. 51.

---

1. On the first page of the defendant's brief in support of his motion and on the first page of his reply brief, the defendant claims that Hannah Henkel is now dead. While referring to the plaintiff throughout his papers as "the Estate of Hannah Henkel," he also states at one point that "the plaintiff in this action is no longer Hannah Henkel." *Defendant's Reply Brief* at p. 1, n. 1. The defendant is wrong. At this point in time, Hannah Henkel is *still* the plaintiff in this action. Fed.R.Civ.P. 25(a), to which the defendant cites, requires substitution of parties to take place "after the death is suggested upon the record by service of a statement of the fact of death as provided herein for the service of [a] motion...." No suggestion of death has been filed with this Court in the manner proscribed by the Federal Rules. Accordingly, a motion to substitute because of the death of Hannah Henkel would not, at this time, be ripe. Even when all parties are aware of the death of a party, the 90-day time limit for a motion for substitution does not commence until service of the suggestion of death in the manner set out by the Federal Rules. *United States v. Miller Brothers Construction Company,* 505 F.2d 1031 (10th Cir.1974).

Pending before the Court is the defendant's motion for summary judgment. The motion was filed April 11, 1985, with substantial evidentiary material attached. On May 9, 1985, the plaintiff filed her opposition to the motion without any evidentiary material attached. On May 24, the defendant filed a reply to the opposition.

The defendant's motion argues:

(1) that an insurance policy purchased for the purpose of defrauding the insurance company is void *ab initio* and thus unenforceable;

(2) that Richard Henkel's guilty plea to attempted theft by deception in Pennsylvania collaterally estops him from denying in this case that he intended to defraud the insurance company; and

(3) therefore, summary judgment must be granted to the defendant since the policy upon which the plaintiff seeks to collect was rendered void by Richard Henkel's prior admission.

The plaintiff's opposition to the motion focuses exclusively on the defendant's second step above. She argues that she should not be estopped from proving that her son did not purchase the insurance policy with an intent to defraud and that the policy is therefore not void. Though she attaches no evidentiary material to her opposition, she suggests, in her brief, that Richard Henkel may have pled guilty to the attempted theft by deception charge even though he was not, in fact, guilty. *See Plaintiff's Brief* at p. 4.

## I. IS AN INSURANCE POLICY PURCHASED FOR THE PURPOSE OF DEFRAUDING AN INSURANCE COMPANY VOID AB INITIO?

While the plaintiff has not challenged this legal conclusion by the defendant, the case law on this question is sparse and by no means clear. This case was brought under the federal court's diversity jurisdiction and, thus, all legal determinations must be based upon Ohio law. *Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In presenting his legal argument on this question, the defendant cited from Missouri, Kansas, Indiana, Louisiana, and Oklahoma cases, but mentioned nothing of Ohio law on this question.

Perhaps the reason for the defendant's omission is the fact that there is little Ohio law relevant to this question. One Ohio statute forbids a killer from in any way benefiting from the death of his or her victim. Ohio Rev.Code Ann. § 2105.19 (Page 1985). Yet that statute does not reach the instant case in which the insurance company seeks to void the insurance policy altogether rather than simply denying any benefits to the killer.

In fact, one Ohio court has held that a beneficiary denied the recovery of proceeds on an insurance policy because of § 2105.19 is not precluded from sharing in those proceeds as an heir of the estate of the insured after the proceeds become a part of the general assets of the estate. *Winters Nat. Bank v. Shields,* 14 O.O. 438 (Probate Ct. of Montgomery Cy.1939). The Ohio statute does not have the effect of voiding the insurance policy altogether, the result urged in this case by the defendant.

Still, it is clear that § 2105.19 is not intended to be the exclusive statement of Ohio law in this area. In *Huff v. Union Fidelity Life Insurance Co.,* 14 Ohio App.3d 135, 470 N.E.2d 236 (Cuy.Co.Ct. App.1984), the court held that "[§ 2105.19] does not purport to allow recovery by persons whose rights are curtailed by the common law." *Id.* at 137, 470 N.E.2d 236. Yet there does not appear to be any statutory or common law in Ohio regarding the defendant's claim that an insurance policy purchased with the intent to defraud the insurance company is void *ab initio.*

When there is no clear pronouncement on a question of state law from the state courts, a federal court sitting under diversity jurisdiction must apply the law it believes the state's highest court would apply if it were ruling on the question. *See Glinsey v. Baltimore & Ohio Railroad Co.,* 495 F.2d 565, 567 (6th Cir.1974); and *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662–663 (3rd Cir.1980). This

Court believes that if the Ohio Supreme Court were to rule on the defendant's theory propounded in the instant case, it would find an insurance policy purchased for the purpose of defrauding the insurance company void *ab initio*.

Though not binding on this Court, there is one Ohio decision which takes a position consistent with the Court's determination herein. In *Mieritz v. Insurance Co.*, 11 Ohio Dec. 759 (Cuyahoga Common Pleas 1901), the court instructed the jury:

> If you shall find that the written application for the policy of insurance in suit was made to the defendant by [the deceased], or that the said policy was by him or the plaintiff obtained or produced from the defendant in furtherance of a conspiracy theretofore entered into by and between the plaintiff and [the deceased] to cheat and defraud the defendant, either by having said [deceased] simulate death or commit suicide for the purpose of enabling the plaintiff to collect from the defendant the sum of money stated in the policy, you will return a verdict for the defendant.

*Id.* at 766–767.

It has been widely held that the insurance policy is void and the insurer may retain all proceeds, "where the beneficiary or the assignee of the policy obtained the policy fraudulently, that is, with the intention of killing the insured in order to collect the insurance proceeds." *Killing of Insured by Beneficiary as Affecting Life Insurance or Its Proceeds*, 27 A.L.R.3d 794, 825 (1984). (For a complete discussion of all of the states which have already adopted this rule, see § 13 of the above cited A.L.R. article.)

This Court recognizes that Richard Henkel was not the named beneficiary in the Gentile insurance policy. Nonetheless, the policy reasons driving the voiding of fraudulently obtained insurance policies are just as applicable. If Richard Henkel arranged for the purchase of the Gentile insurance policy with the intent to later kill her so that he could reasonably benefit in some way, the policy is void. It is the defendant's burden to make that showing.

## II. IS RICHARD HENKEL COLLATERALLY ESTOPPED FROM DENYING THAT HE INTENDED TO DEFRAUD THE INSURANCE COMPANY BECAUSE OF HIS GUILTY PLEA TO ATTEMPTED THEFT BY DECEPTION IN PENNSYLVANIA?

The defendant claims that Richard Henkel's guilty plea to attempted theft by deception in Pennsylvania collaterally estops him from denying his intent to defraud in this action. The plaintiff strenuously resists that claim, arguing that she was not in privity with her son at the time he pled guilty, that he had alterior motives for doing so, and that she has not had a full and fair opportunity to litigate the question of his intent.

The Court is unwilling, at this time, to make a determination on this question. Under L.Civ.R. 3.01(2):

> The moving party shall serve and file with his motion a brief written statement of reasons in support of the motion and *a list of the authorities on which he relies*. (Emphasis added.)

L.Civ.R. 3.01(3) imposes a like burden on the party opposing a motion. These rules presume that the authorities cited will be from the jurisdiction whose authorities control the determination of the motion. Both parties have failed to cite any authority from Pennsylvania—the jurisdiction whose law controls the determination of this issue.

A federal court sitting under diversity jurisdiction must follow the conflict of laws rules prevailing in the state in which it is sitting. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Myers v. Alvey-Ferguson Co.*, 331 F.2d 223 (6th Cir.1964). Under Ohio law, as mandated by the full faith and credit clause of the United States Constitution, the Ohio courts give judgments from sister states whatever effect they would be given in the courts of the state which rendered the original decision.

*Miller v. Bock Laundry Machine Co.*, 64 Ohio St.2d 265, 416 N.E.2d 620 (1980).

Richard Henkel's criminal conviction was obtained in a Pennsylvania trial court. Accordingly, whatever collateral estoppel effect should be given to Richard Henkel's conviction, or issues resolved by it, will be determined by what collateral estoppel effect the Pennsylvania courts would afford.

■ Since neither of the parties in this action have cited any Pennsylvania law on this question, the Court will hold the defendant's summary judgment motion in abeyance. Both parties shall have until Monday, July 8, 1985, at 4:00 p.m. to provide the Court with legal citations from Pennsylvania relevant to the pending motion.

## III. SUMMARY JUDGMENT ON THE MERITS

■ In the defendant's reply brief, he continues to insist upon the viability of his collateral estoppel theory. In passing, he notes that, with or without estoppel, the plaintiff has failed to dispute the defendant's allegation that Richard Henkel purchased the insurance policy with the intention of defrauding the insurance company. Had the defendant originally sought summary judgment on that ground, and had the plaintiff responded with no more than she did, the Court would be prepared to grant summary judgment for the defendant at this time.

Instead, the defendant explicitly limited the scope of his initial motion to summary judgment based upon collateral estoppel. *See Defendant's Brief* at p. 3, n. 2. The plaintiff has not yet been faced with a motion forcing her to show what evidence, if any, she has to demonstrate that her son did not purchase the policy with an intent to defraud the insurance company. Accordingly, this Court can not grant summary judgment on that ground at this time.

Still, the evidence provided to the Court for the purpose of placing "the guilty plea and this civil litigation in proper context" (*Defendant's Brief* at p. 3., n. 2), seems quite overwhelming. While it is conceivable that the plaintiff will be able to supply the Court with evidence to counteract the defendant's explicit statements of intent contained in the plea transcript, it seems unlikely. Without evidence which genuinely puts in issue the defendant's claim that Richard Henkel arranged for the purchase of Deborah Gentile's insurance policy for the explicit purpose of defrauding the insurance company, this Court will grant summary judgment for the defendant.

· Accordingly, the plaintiff shall have until Monday, July 8, 1985, at 4:00 p.m., to provide any evidentiary material relevant to the defendant's motion for summary judgment on the merits. In addition, the defendant may submit any additional relevant evidentiary material on that motion by July 8 at 4:00 p.m. All other dates announced in the Court's order of March 18 are vacated. Should the defendant's motion for summary judgment be overruled, new dates will be announced at that time.

IT IS SO ORDERED.